## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **ARDEX LABORATORIES, INC. AND ARDEX OF SOUTH FLORIDA, LLC**, | : <br> : <br> : |
| *Plaintiff*, | :    Case No: _____ <br> : |
| v. | : <br> : |
| **ALBERT HERNANDEZ**, | : <br> : |
| *Defendant*. | : <br> : |

## COMPLAINT

Plaintiffs, Ardex Laboratories, Inc. ("Ardex Laboratories") and Ardex of South Florida, LLC ("Ardex of South Florida," and together with Ardex Laboratories, "Plaintiffs," "Ardex," or the "Company"), by and through their undersigned counsel, hereby bring the following Complaint against Albert Hernandez ("Defendant" or "Hernandez") seeking monetary damages arising out of Hernandez's repeated breaches of his Employment Agreement and his common-law fiduciary duty to Ardex during the period of time he was employed by Ardex.

## PRELIMINARY STATEMENT

1.　　Ardex is a family-owned business that was founded in 1949 and primarily formulates, produces, and distributes an extensive array of professional automotive detailing products. The market for automotive detailing products is highly competitive, and businesses rely on their relationships with their customers and the reputation of their products in order to distinguish themselves in the marketplace. Ardex has been forced to initiate this action to recover for the lasting harm that its former employee, Hernandez, has caused by violating his binding restrictive covenants and directly competing with Ardex in Ardex's busy South Florida market.

2.      As a condition of Hernandez's employment with Ardex, Hernandez entered into an agreement that precludes him from competing against Ardex for a two-year period following his separation from the Company.  In the same agreement, Hernandez acknowledged that he would receive confidential information as part of his employment with the Company and agreed to maintain the confidentiality of such information.  These reasonable and limited restrictions provided assurances to Ardex that its confidential information would be used only for legitimate purposes relating to Hernandez's employment with Ardex, and that Hernandez (and his subsequent employer(s)) should not be able to unreasonably benefit from it.

3.      On May 12, 2023, Hernandez resigned from employment with Ardex.  Upon information and belief, Hernandz resigned in order to seek employment or otherwise perform services with one or more direct competitors of Ardex in the same South Florida market.  Upon information and belief, such employment would necessarily, if not inevitably, rely upon the confidential information Ardex entrusted to Hernandez as an employee.  Upon information and belief, Hernandez also has retained confidential information that he acquired in the course of his employment with Ardex.

4.      Ardex thus brings this action to seek redress for the harm caused to the Company by Hernandez's flouting of his contractual and common law obligations by virtue of performing work for a direct competitor that would allow the competitor to unfairly compete against the Company and using confidential information obtained in the course of his employment.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Hernandez is a citizen of the State of Florida.  Ardex of South Florida is a limited liability company whose sole member is Ardex Laboratories, which is a Pennsylvania corporation with a principal place of business in Philadelphia, Pennsylvania.  Complete diversity therefore is present.

2

6.     The amount in controversy exceeds $75,000 given that the monetary relief sought under Plaintiffs' claims exceeds $75,000, excluding attorneys' fees and costs.

7.     All conditions precedent have been met or waived.

8.     Venue is proper pursuant to 28 U.S.C. § 1391, as Hernandez resides in Palm Beach County and operates business in this District and a substantial portion of the transactions and acts and omissions that give rise to this action occurred in this District.

## THE PARTIES

9.     Plaintiff Ardex Laboratories is a Pennsylvania corporation with a principal place of business at 2050 Byberry Road, Philadelphia, PA 19116.

10.     Plaintiff Ardex of South Florida is a Florida limited liability company with a principal place of business at 1801 North Powerline Road, Pompano Beach, FL 33069.  Ardex of South Florida's sole member is Ardex Laboratories.

11.     Defendant Hernandez is an individual who resides at 21293 Purple Sage Lane, Boca Raton, FL 33428, and is doing business in this District.

## FACTUAL ALLEGATIONS

**A.     Ardex's Business and Its Reliance on Confidential Information to Support Its Success.**

12.     Ardex is a third-generation industry leader in the reconditioning and detailing industry.  Ardex formulates, manufactures, and distributes a wide range of products, including compounds and polishes; ceramic coatings; tire dressings; waxes; cleaners and soaps; marine products; and a number of other specialty products.  Ardex employs an in-house chemist to formulate and design new products on a regular basis, both in response to customer requests and based on trends that Ardex sees in the industry.  Ardex relies on its employees to contribute ideas

3

and input with respect to Ardex's line of products based on their familiarity with Ardex's products and customer needs.

13.     There are several general categories of information that constitute Ardex's confidential information as relevant to this action.

14.     Those categories include pricing lists, which vary from one Ardex customer to another, as well as customers' historic preferences and prior orders of Ardex products.  For example, a certain product may be better suited to one customer's needs, while a different product may be preferable for another customer's requirements.  Ardex invests substantial resources in helping its employees learn these details about customers in those employees' areas.  A competitor easily could use such information to derive an unfair advantage by strategically undercutting Ardex's customer-specific pricing or leveraging Ardex's knowledge of customer preferences.

15.     Ardex also relies upon the good will and relationships that customers develop with employees, while those employees are performing their job duties on behalf of Ardex.  For example, Ardex may periodically compensate employees for entertaining customers or buying them meals.  Ardex may also reimburse employees for the cost of conducting on-site visits for customers, such as the cost of gas.  These site visits are especially crucial to Ardex's business, as a large part of the value that Ardex provides to its customers is its employees' expertise in the best manner and method to use detailing and reconditioning products.  Ardex's sales personnel are "Professional Reconditioning Consultants," and customers purchase Ardex products in reliance on the fact that they will receive expert advice regarding how best to use them.

16.     Ardex's confidential information is not limited to the above categories.  By way of additional examples, employees may have knowledge of the manner in which Ardex identifies

4

potential new products, the method by which Ardex works with its in-house chemist to formulate

such products, and Ardex's business strategies and future plans for marketing and expansion.

17.     All of this information has been developed over months or years and has entailed a

significant expense outlay by Ardex.

18.     Accordingly, Ardex has in place policies, including provisions in Hernandez's

Employment Agreement, that require employees to keep its business information confidential and

prohibit employees from exploiting its information for any purpose other than for the benefit of

Ardex.

19.     Ardex requires its sales employees to acknowledge their confidentiality obligations.

Ardex also requires that certain employees, including Hernandez, enter into restrictive covenants

preventing them from competing with the Company for a limited time so that Ardex's direct

competition does not receive the benefit of its confidential information.  In sum, Ardex recognizes

the importance of its confidential information and takes reasonable and appropriate steps to

safeguard it.

  **B.**  **Hernandez Enters into a Restrictive Covenant Agreement with Ardex to Protect Ardex's Confidential Information.**

20.     Hernandez was hired by Ardex effective June 2, 2003.  He was with the Company

for approximately 20 years.  As such, Hernandez naturally developed a deep knowledge and

understanding of the Company's confidential information.  Throughout his employment as a

Regional Sales Manager, Hernandez utilized Ardex's confidential information to make and

increase sales and to expand Ardex's customer base.

21.     Hernandez collaborated closely with customer contacts to gain a deep

understanding of their needs.  He further gained understanding as to specific customers'

preferences and practices and benefited from the goodwill generated through his association with

5

Ardex.  That goodwill stemmed from, among other things, the services and business development measures that were provided at the expense of Ardex.

22.     Throughout the performance of his job duties for Ardex, Hernandez has gained knowledge of Ardex's relationships with its customers, and the types of products and services provided by Ardex to its customers.  This information is not publicly known and has been developed through years of cultivating relationships with customers and providing customers with valuable advice and services.  Upon information and belief, Hernandez lacked relationships with these customers prior to his employment with Ardex.  Through Hernandez's work with a competitor, he has been able to trade on the resources expended by Ardex to develop these customer relationships for the benefit of Ardex's competitors and unlawfully freeride on Ardex's investment.

23.     Because of Hernandez's access to Ardex's confidential information, he entered into the Employment Agreement with Ardex on May 30, 2003.  Hernandez was required to enter into the Employment Agreement as a condition of his employment, as the Employment Agreement expressly recognizes.  A true and correct copy of his Employment Agreement is attached hereto as Exhibit A.

24.     By executing the Employment Agreement, Hernandez acknowledged that he had been given the opportunity to review the Employment Agreement thoroughly with legal counsel and had either done so or knowingly waived the opportunity to do so.  Ex. A at § 13(B).

25.     The Employment Agreement prohibits Hernandez, during his employment and for two years thereafter, from being employed or performing services for another company that competes with Ardex or soliciting any customer or prospective customer of the Company.  *See* Ex. A, § 11(A)-(B).

6

26.     The Employment Agreement also required Hernandez to "(a) maintain the confidentiality of, and (b) not disclose in any way to any person or entity" any confidential or proprietary information. *Id.* § 10.

27.     The Employment Agreement likewise required Hernandez to return any information belonging to the Company in the event of termination of his employment. *Id.* § 12.

28.     These provisions set forth in the Employment Agreement are reasonable and enforceable.

**C.      Hernandez's Repeated Breaches of His Employment Agreement and His Common-Law Duties to Ardex.**

29.     On May 12, 2023, Hernandez abruptly resigned from his position with Ardex. Even prior to his resignation, however, Ardex received signals that Hernandez was in breach of his Employment Agreement as well as his common law duties to Ardex.

30.     Specifically, Hernandez was spending long periods of time with a particular customer, Lenny's Car Wash ("Lenny's"), a car wash with four locations in Southern Florida. On information and belief, Lenny's was in the process of getting into the business of producing automotive reconditioning products, products that are in direct competition with Ardex's products. On information and belief, in or about April 2023, while still employed by Ardex, Hernandez told an Ardex employee that he was working with Lenny's and was planning to distribute competitive products on their behalf. On information and belief, Hernandez also showed other employees a business card bearing his name and the Lenny's logo, reflecting that he was working in a competitive capacity while employed by Ardex.

31.     To the extent that Hernandez performed work on behalf of Lenny's while he continued to be employed by Ardex, Hernandez did so in violation of his Employment Agreement. The Employment Agreement provided that while employed by Ardex, Hernandez "shall not

7

engage in any business or perform any service in any capacity whatsoever other than for the Company." Ex. A § 3(C).  Further, the Employment Agreement provided that "[d]uring the term of this Agreement," Hernandez shall not "directly or indirectly . . . be employed by . . . or have any interest in any other business selling products or offering services similar to those sold or offered by, or in direct competition with, Ardex."  *Id.* § 11(A).

32.     In addition, to the extent that Hernandez performed work that benefited Ardex's competitors while he was employed by Ardex, such conduct was a breach of his duty of loyalty to Ardex, his then-current employer.

33.     On information and belief, Hernandez continued to do business with Lenny's, a competitor of Ardex, after he ended his employment with Ardex.

34.     Hernandez's violation of his contractual obligations to Ardex was not limited to his services on behalf of Lenny's.  On information and belief, Hernandez also has been employed or otherwise offered or provided services to Santex Corporation ("Santex"), an Ardex competitor.

35.     On information and belief, Hernandez has solicited and serviced customers he serviced on behalf of Ardex on behalf of Santex for the purpose of having these customers do business with Santex rather than Ardex.  By way of just one example, in summer 2023, Ardex employees who were visiting a large Ardex customer located at the Miami airport witnessed Hernandez delivering products on behalf of Santex.

36.     By way of another example, in August 2023, Hernandez was seen at a different customer site, a Volkswagen dealership with several different locations in South Florida, presumably either servicing or soliciting that customer on behalf of Santex.

37.     Ardex employees have received additional information in the market indicating that Hernandez was providing services on behalf of Ardex's competitors to Ardex customers.

38.     In early December 2023, Ardex employees witnessed Hernandez visiting an Ardex customer in a truck belonging to another one of Ardex's competitors, Consolidated Dealer Supplies, LLC ("CDS").  Any work that Hernandez may be performing for Ardex customers on behalf of CDS is likewise in direct violation of his Employment Agreement with Ardex.

39.     Other evidence also supports the conclusion that Hernandez is soliciting customers in violation of his Employment Agreement.  Ardex's investigation into the scope of Hernandez's violation of his contractual and other obligations is ongoing.

40.     In addition, during the period of time that he was employed by Ardex, Hernandez utilized a company-issued cell phone.  While Hernandez was employed by Ardex, Hernandez's phone would ring several times a day, and could ring up to thirty or forty times a day.  Hernandez returned his company-issued cell phone to Ardex at the time he resigned from Ardex, but the phone has ceased to ring as frequently as it did during Hernandez's employment and could go days without ringing at all.  On information and belief, Hernandez has informed Ardex customers with whom he used to communicate to contact him using a different phone number than the one he used while employed at Ardex, and thus has diverted legitimate customer inquiries.

41.     Moreover, prior to returning his company-issued cell phone, Hernandez removed all text message correspondence with customers that he may have had on his cell phone. Hernandez also refused to provide access to his iCloud account and Ardex thus does not have access to any of those communications.  This omission is important because, on information and belief, Hernandez used a corporate credit card to pay for his iCloud account at Ardex's expense and frequently used the iCloud account to transact business with Ardex customers.  Thus, Ardex lacks access to the iCloud-based communications Hernandez may have with Ardex's customers

9

and that, on information and belief, Hernandez may be continuing to use to communicate with Ardex customers.

42.     Fearing that Hernandez was continuing to compete with Ardex on behalf of Santex, on October 17, 2023, Ardex's counsel wrote to Santex and Hernandez notifying them that Santex's employment of Hernandez was in direct breach of the Employment Agreement.  While Santex stated that it would terminate its relationship with Hernandez, as of commencement of this action, Ardex has received no response to that communication from Hernandez.

43.     On November 27, 2023, Ardex's counsel sent a certified letter to Hernandez again notifying him that working for Ardex's competitors would be in breach of his Employment Agreement and attaching a draft of this Complaint.  On December 4, 2023, Hernandez responded by email, but refused to address the substance of Ardex's concerns.  Neither Ardex nor Ardex's counsel has received any further substantive communication from Hernandez, much less confirmation that he has ceased competing with Ardex.

44.     In addition, Hernandez has retained confidential information belonging to Ardex in further breach of his Employment Agreement.  *See* Ex. A, §§ 10, 12.  In his December 4 email, Hernandez acknowledged retention of an Ardex price list.  Hernandez utilized a personal email address for Ardex business yet has not turned over any business communications from that email address.  Hernandez returned his Company laptop, but the laptop was wiped of any information. Ardex has no way of knowing what happened to the contents of the laptop, if any.

45.     Finally, Hernandez has in the past indicated that he had substantial files of paper documents in his home.  Upon information and belief, Hernandez may be using such confidential information to aid his efforts in unlawfully working for Ardex's competitors in violation of his Employment Agreement.

PHIL1\23233\0001\10753537.v5-12/12/23

46.     Hernandez's misappropriation of confidential information, and his use of such information to benefit Ardex's competitors, while he was employed with Ardex breached his duty of loyalty to Ardex.

**D.     The Harm Ardex Has Suffered as a Result of Hernandez's Repeated Breaches of His Employment Agreement and his Duty to Ardex.**

47.     Hernandez's unlawful competition with Ardex, and his other repeated breaches of his Employment Agreement and his common-law duties, have caused direct and lasting harm to Ardex.

48.     Ardex's sales have suffered greatly in the South Florida region since Hernandez's departure.  As of December 2023, Ardex's sales have declined by hundreds of thousands of dollars, which, upon information and belief, is a direct result of the unlawful conduct of Hernadez and for which it seeks recovery in this litigation.  Even more concerning, the pace of the decline in sales has accelerated over time.

49.     Ardex has no way of knowing how many customers have decreased their orders of Ardex products, or how many prospective customers may have become customers of Ardex but instead purchased from another competitor due to Hernandez's unlawful conduct.

50.     Ardex is entitled to an award of damages in excess of $75,000 to compensate it for Herandez's breaches of his Employment Agreement and accompanying duties to Ardex.

**COUNT I**
**BREACH OF CONTRACT**

51.     Paragraphs 1 through 50 are incorporated by reference as if fully set forth herein.

52.     Hernandez accepted the Employment Agreement and agreed to be bound by its terms as a condition of his employment with Ardex.

53.     Hernandez continues to be bound by the terms of his Employment Agreement, which is an enforceable contract between himself and Ardex.

11

54.    Ardex's agreement with Hernandez prohibits him from working for a competitor of Ardex and from disclosing any confidential information belonging to the Company.

55.    Lenny's, Santex, and CDS, among others, are direct competitors of Ardex that provide highly similar products and services to similar customers in the same industry.

56.    Upon information and belief, Hernandez accepted employment with Lenny's and/or Santex or is otherwise providing services to them, and his job duties for Lenny's and/or Santex substantially overlap with the job duties he performed while employed by Ardex.

57.    Upon information and belief, Hernandez engaged in discussions with CDS regarding potential employment without informing CDS that he was subject to a non-competition agreement, and/or accepted employment with CDS or otherwise is providing services to CDS that substantially overlap with the job duties he performed while employed by Ardex.

58.    Upon information and belief, Hernandez has retained confidential information belonging to Ardex, and may be using such information in connection with his employment with Lenny's and/or Santex.  Upon information and belief, Hernandez may have intended to and/or informed CDS that he intended to use confidential information of Ardex's in connection with potential employment by CDS.

59.    Ardex has suffered damages in the form of lost sales, diminished customer relationships, and loss of market share.

60.    As a direct and proximate result of Hernandez's breach of the Employment Agreement, Ardex has suffered, and will continue to suffer, substantial damages absent Court intervention, the precise amount of which will be determined at trial.

## COUNT II
## BREACH OF FIDUCIARY DUTY

61.    Paragraphs 1 through 60 are incorporated by reference as if fully set forth herein.

62.     It is well-established under Florida law that an employee owes a duty of loyalty to his or her employer during his or her period of employment.  Secretly assisting a competitor or soliciting customers or employees for the benefit of a future employer violates the duty of loyalty. Misusing an employer's confidential information to the detriment of an employer also violates the duty of loyalty.

63.     On information and belief, while Hernandez was still employed by Ardex, Hernandez was working behind the scenes for the benefit of Ardex's competitors.

64.     On information and belief, while Hernandez was still employed by Ardex, Hernandez misused Ardex's confidential information to Ardex's detriment and for the benefit of Ardex's competitors.

65.     Hernandez's work on behalf of Ardex's competitors and his misuse of confidential information constitute independent breaches of his duty of loyalty to Ardex.

66.     Ardex has suffered damages in the form of lost sales, damaged reputation, diminished customer relationships, and loss of market share.

67.     As a direct and proximate result of Hernandez's breaches of fiduciary duty, Ardex has suffered, and will continue to suffer, substantial damages absent Court intervention, the precise amount of which will be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Ardex requests the following relief:

(a)     Hernandez be directed to immediately return to Ardex all Company documents and information.

(b)     Hernandez be directed to immediately identify and make available all electronic devices and accounts or locations of paper records in his possession, custody, or control to ensure the return of Ardex documents and information.

13

(c)  Hernandez be directed to pay actual damages, compensatory damages, punitive

damages, pre-judgment interest, and post-judgment interest.

(d)  This Court order such other and further relief, including attorneys' fees and costs,

as it deems appropriate.

Dated:  December _14_, 2023

OF COUNSEL:

Jonathan Krause (*pro hac vice* forthcoming)
Catherine V. Wigglesworth (*pro hac vice*
forthcoming)
KLEHR HARRISON HARVEY
BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-4496
jkrause@klehr.com
cwigglesworth@klehr.com

*Counsel for Plaintiffs Ardex Laboratories Inc.
and Ardex of South Florida LLC*

SHAHADY & WURTENBERGER, PA
Attorneys for Plaintiff
200 E. Palmetto Park Road, Suite 103
Boca Raton, FL 33432
Tel: (954) 869-0980
fschwartz@swlawyers.law - Service by Email

By: _____
FRED A. SCHWARTZ, ESQUIRE
Florida Bar No. 360538

14

# EMPLOYMENT AGREEMENT
## Ardex of South Florida



THIS EMPLOYMENT AGREEMENT (the "Agreement") is entered into this 30th day of May, 2003, between **ARDEX OF SOUTH FLORIDA, LLC.,** a Florida limited liability corporation with its principal place of business at 4153-4155 North Dixie Highway, Pompano Beach, FL 33064 (the "Company") and, Albert M. Hernandez, a resident and citizen of USA with an address 306 Garden Drive #202, Pompano Beach, FL33069 (the "Employee").

## BACKGROUND

1.     The Company manufactures and sells professional automotive polishing and cleaning products on its own and through a nationwide network of independent distributors.

2.     The Employee seeks employment by the Company. The services of the Employee, his managerial and sales experience, and his knowledge of the affairs of the Company are of value to the Company.  The Company desires the exclusive services of the Employee for a definite term as set forth below.  Similarly, the Employee desires employment with Company on an exclusive basis and for a definite term as set forth below.   Accordingly, the parties enter into this Agreement.

## AGREEMENT

In consideration of the foregoing recitals and the mutual promises, commitments and understandings contained in this Agreement, the receipt and sufficiency of which is acknowledged, the Company and the Employee agree as follows:

1.   **Consideration.**  As a condition of employment the Employee shall enter into the restrictive covenant contained in this Agreement, and in consideration of all of the Employee's other obligations contained in this Agreement, the Company shall pay the Employee a base compensation as set forth in paragraph "4" below .

2.   **Engagement.**

   **A.**   **Appointment.**  Subject to the terms of this Agreement, the Company appoints the Employee as its sales agent and trainer and the Employee accepts such appointment and agrees to devote his full time and best efforts to develop the market for the Company's products and services.

   **B.**   **Relationship.**   The relationship between the parties shall be governed by this agreement and the Company's other general policies regarding employment, provided that, in the event of any conflict, this agreement shall control.

# EXHIBIT A

G:\employee documents\employment agreements\NCAHernandezSouthFL.doc

# EMPLOYMENT AGREEMENT
## Ardex of South Florida



**C.** **Term.** The term of this Agreement is one (1) year and shall automatically renew from year-to-year thereafter, unless sooner terminated as set forth below.

**3.** **Duties of the Employee.**

**A.** **General Management.** During the term of this Agreement, the Employee, acting on behalf of the Company, shall use his best efforts to maximize the market for and sell, or cause to be sold, the Company's products and services and to perform such other functions incidental thereto as shall from time-to-time be specified by the Company or as are customary in the industry, including without limitation:

    (1)    to solicit new business;

    (2)    to hire, train and supervise/manage sales personnel as directed by the company;

    (3)    to engage in route truck sales in a specified territory;

    (4)    to sell the Company's products to customers and users identified by the Company;

    (5)    to enter into, execute, acknowledge and deliver all contracts, agreements or instruments necessary or appropriate to carry out his responsibilities under this Agreement.

**B.** **Additional Duties.** The Employee shall perform such additional duties for the Company as may be reasonably requested by the Company from time-to-time.

**C.** **Best Efforts.** The Employee shall devote his full time and best efforts to the performance of his duties under this Agreement. The Employee shall use his best efforts to originate new customers for the Company. The Employee shall not engage in any business or perform any service in any capacity whatsoever other than for the Company.

**4.** **Compensation.**

**A.** **Base Compensation.** For all duties to be performed by the Employee under this Agreement, the Company shall pay the Employee an agreed upon gross annual salary, which is subject to change from time-to-time plus an agreed upon bonus or commission.

**B.** **Benefits.** The Employee shall receive the benefits package described in Schedule 1 attached to this Agreement.

# EMPLOYMENT AGREEMENT
### Ardex of South Florida



C.   **Expenses.**

(1)   **Travel and Overnight Accommodations.**   So long as the Employee has obtained the Company's prior written consent, the Company will reimburse the Employee for the lowest cost airline, hotel and automobile expenses incurred in performing his duties under this Agreement.

(2)   **Other Expenses.**   All other expenses incurred in conjunction with the performance of his duties hereunder shall be borne by the Employee.

(3)   **Reimbursements.**   The Employee shall be reimbursed in accordance with the Company's then-current expense reimbursement plan, as modified from time-to-time at the sole discretion of the Company.

5.   **No Obligations.**   The Employee shall not incur any obligation or execute any documents which evidence an obligation on behalf of the Company without the Company's prior written consent.

6.   **Recording Sales.**   All sales made by the Employee shall be on business forms specified by the Company and shall be maintained at the Company's offices.  All business done by the Employee shall be for the account of the Company.  The Employee shall not perform any "side" jobs or perform any sales or service individually or for any third party.

7.   **Standards of Conducts.**   The Employee will comply with all applicable laws, ordinances, rules, regulations and requirements of governmental authorities, including without limitation, all laws, regulations and other requirements relating to the sale and use of the Company's products and in the performance of his responsibilities under this Agreement.  Subject to the foregoing, the Employee shall conduct all operations in accordance with the policies, procedures and practices established from time-to-time by the Company, but he will not be held liable or responsible for losses sustained or liabilities incurred by the Company, except those that result from his negligent or intentional conduct.  The Employee will indemnify and hold the Company harmless to the extent of any loss, claim, demand or cause of action (including attorneys' fees) sustained made or brought by third parties and arising in connection with or wholly or partially attributable to the Employee's performance of the terms of this Agreement, except such losses, claims, demand and causes of action that are caused by the gross negligence of the Company.

# EMPLOYMENT AGREEMENT
## Ardex of South Florida



**8.** **Termination.**

      **A.** **Termination With Cause After Thirty (30) Days Notice to Cure.** If the Employee fails to perform or comply with any one (1) or more of the terms or conditions of this Agreement, or fails to meet sales figures expected by the Company from time-to-time, the Company may terminate this Agreement upon thirty (30) days prior written notice of default to the Employee, if the default remains uncured at the conclusion of the thirty (30) day cure period.

      **B.** **Failure to Cure.** If the Employee fails to cure the alleged breach within the applicable cure period, then this Agreement shall be considered terminated as of the date stated in the default notice as the last day of the cure period.

      **C.** **Immediate Termination for Cause.** The Employee may be discharged immediately, without notice, by the Company upon good cause. For purposes herein, "good cause" shall include but not be limited to (i) dishonesty detrimental to the interests of the Company; (ii) continuing inattention to or neglect of the duties to be performed by the Employee, except that which is the result of illness or accident; (iii) willful disloyalty to the Company; (iv) violation of any of the terms or conditions of this Agreement; (v) violation of any of the Company's then-existing published rules or regulations; (vi) unauthorized contact with any of the Company's customers for any competitive business purpose whatsoever; or (vii) selling professional automotive reconditioning and detailing products or other products similar to those sold by the Company for any third party.

      **D.** **Death or Disability.** This Agreement shall terminate immediately, without notice, upon the death or disability of the Employee. For purposes herein, "disability" shall mean the inability of the Employee due to illness or accident to perform the duties required to be performed pursuant to this Agreement for a continuing period in excess of thirty (30) days.

**9.** **No Further Liability.** Upon termination of this Agreement by either the Company or the Employee, neither party shall have any further obligation to the other party, except as set forth in this Agreement.

**10.** **Disclosure of Proprietary Information.** The Company possesses certain proprietary and confidential information relating to the manufacture, distribution and sale of automotive polishing and cleaning compounds and trade secrets including, without limitation, its sales techniques, marketing plans, advertising and promotional materials, merchandising techniques, current and anticipated research and development projects, technical data, trademarks, trade dress, software, mailing and customer lists, accounting systems and business data regarding costs, pricing, markets, salaries, wages, operations, systems, policies, procedures, systems, compilations of information, customer records (including names, identifying information and product requirements), specifications and other confidential information (the "Confidential Information").

      Confidential Information also includes information and documentation concerning the types and kinds of raw materials used by the Company, the suppliers of such raw materials and costs thereof, research projects, inventions, developments, designs, operating plans

# EMPLOYMENT AGREEMENT


### Ardex of South Florida

and procedures, product cost information, profits, markets, current and prospective processes, formulas, methods, and compounding techniques employed by the Company in connection with the manufacture of its products, and similar items of information. Confidential Information shall also include all information learned as a consequence of Employee's employment with the Company, and not generally known in the industry, even if such information was developed by the Employee. The Employee acknowledges that the Confidential Information has been and will continue to be disclosed to the Employee as a result of this Agreement and his employment with the Company, including the identity of the Company's customers. It is therefore agreed that during, or at any time after termination of this Agreement, the Employee shall: (a) maintain the confidentiality of, and (b) not disclose in any way to any person or entity any of the Confidential Information or other Company information which is of a proprietary or confidential nature. The Employee expressly agrees that paragraph 12 includes any Confidential Information which the Employee learned as a result of his employment with the Company prior to the date of this Agreement.

## 11.   Restrictive Covenants.

**A.   During the Term of This Agreement.** During the term of this Agreement, neither the Employee, nor any member of his immediate family shall, directly or indirectly, for the Employee or through, on behalf of, or in conjunction with any other person or entity, own, maintain, engage in, be employed by, lend money to, extend credit to or have any interest in any other business selling products or offering services similar to those sold or offered by, or in direct competition with, the Company.

**B.   After the Term of This Agreement.**

(1)   For a period of two (2) years after the expiration or termination of this Agreement, regardless of the cause, neither the Employee, nor any member of his immediate family shall, directly or indirectly, for the Employee or through, on behalf of, or in conjunction with any other person or entity, own, maintain, engage in, be employed by, lend money to, extend credit to, or have any interest in any other business selling products or offering services similar to those then-sold or offered by, or in direct competition with, the Company.

(2)   For a period of two (2) years after the expiration or termination of this Agreement, regardless of the cause, neither the Employee, nor any member of his immediate family shall, directly or indirectly, for the Employee or through on behalf of, or in conjunction with any other person or entity, solicit, service or contact any customer or prospective customer of the Company or contact any of the Company's suppliers or referral sources, for any competitive business purpose whatsoever, or hire any employee of the Company or induce any employee of the Company to leave the employment of the Company. A prospective customer is one identified and contacted by the Company within one (1) year preceding the date the Employee's employment with the Company is terminated.

(3)   At any time after the expiration or termination of this Agreement, regardless of the cause, neither the Employee, nor any member of his immediate family shall, directly or indirectly, for the Employee or through, on behalf of, or in conjunction with any other

# EMPLOYMENT AGREEMENT
## Ardex of South Florida



person or entity, use, reproduce or sell any of the Company's customer lists, mailing lists, or other lists, books, records, manuals, literature, products and any other material owned by the Company in connection with the conduct of its business for any competitive business purpose whatsoever.

**C.    Scope.**  Given that the Company does business in the USA, the parties agree that the scope of the covenants shall extend to any area in USA , in which the Company has transacted business in the twenty-four (24) months preceding the date on which the covenant is sought to be enforced, but in no event shall the scope be less than twenty (20) miles from the Company's headquarters and/or any factory owned and operated distribution outlet.

**D.    Tolling.**  The Employee acknowledges and agrees that the time limitations under paragraph 13 shall be tolled during any default thereunder.

**12.    Return of Materials.**  During the term of employment and anytime thereafter, the Employee shall not, with the Company's prior written consent, remove from the Company's premises any formulas, code books, price lists, product manuals or equipment, or any written document, computer run or other tangible property belonging to the Company or containing information as to customer names, addresses and needs, products ordered by such customers, schedule of sales calls upon such customers, processing or compounding information or instructions, data applicable to methods of manufacture, types, kinds, suppliers and costs of raw materials or any item of Confidential Information not otherwise noted herein.  The Employee shall not copy or use, for his own or any other person's use, any information contained in or on said documents, runs, lists or other property, without first obtaining the Company's written consent.  In the event of any termination of the Employee's employment or upon request of the Company, whether or not for cause and regardless of the reason, the Employee will promptly deliver to the Company all documents, data, records and other information of property of the Company that the Employee may possess.

**13.    Improvements and Discoveries.**

**A.    No Prior Restrictions.**    Any and all inventions, improvements, discoveries, processes or formulas the Employee develops or discovers during his employment related to the business of the Company shall be fully disclosed to the Company's principals, and such items shall become the sole and absolute property of the Company without the Employee taking any further action.  Upon the request of the Company, the Employee shall execute, acknowledge and deliver such assignments, certificates and other documents as the Company may consider necessary or appropriate to properly evidence the Company's right, title and interest therein.  Such inventions, improvements, discoveries, processes, formulas and all information related thereto shall be confidential and shall be subject to all restrictions set forth in this Agreement.

**B.    Employee Capabilities and Attorney Review.**  Employee's experience and capabilities are such that the restrictions herein will not prevent him from obtaining employment or otherwise earning a living at the same general economic level reasonably required by him. EMPLOYEE HAS, PRIOR TO THE EXECUTION OF THIS AGREEMENT,

# EMPLOYMENT AGREEMENT
## Ardex of South Florida



BEEN GIVEN THE OPPORTUNITY TO REVIEW THIS AGREEMENT THOROUGHLY WITH HIS LEGAL COUNSEL, AND HAS EITHER DONE SO OR HAS KNOWINGLY WAIVED THE OPPORTUNITY TO DO SO.

**14.    Representations and Warranties.**  The Employee represents and warrants to the Company that he is not subject to any agreement with any former employer which contains any restriction on future employment, including, but not limited to, any restrictive covenant (or non-competition agreement), confidentiality or similar restriction.  If any written agreement exists, the Employee has given a copy to the Company prior to entering into this Agreement.  The Employee will indemnify and hold the Company harmless from any liability, claim or proceeding, including costs and attorney's fees, resulting from any claims by any of his former employers, based on a breach of any such agreement.

**15.    Notices.**  All notices required to be given hereunder shall be in writing, shall be effective upon the earlier of personal delivery (including personal delivery by facsimile), or the next day after mailing by overnight mail (by a recognized carrier) at the addresses indicated below:

If to the Company:      Fred Goldman, President
                        Ardex of South Florida LLC
                        2050 Byberry Road
                        Philadelphia, PA 19116

With a copy to:         Fisher & Zucker  LLC
                        121 Ave of the Arts
                        Suite 1200
                        Philadelphia  PA  19107

If to the Employee:     Albert M. Hernandez
                         306 Garden Drive #202
                        Pompano Beach, FL 33069

or to such other address or to the attention of such other persons as a party shall designate by prior written notice in accordance with this paragraph.

**16.    Intent and Enforcement.**  The Employee agrees that it would be impossible to calculate the Company's damages from the Employee's breach of the promises contained in this Agreement.  It is the intent of the parties that this Agreement shall be judicially enforced to the fullest extent permissible under applicable law; accordingly, the parties agree that any reduction in scope or modification of any part of the Agreement contained herein shall not render any other part unenforceable.  In the event of the actual or threatened breach of this Agreement by the Employee, or any member of his immediate family, the Company shall be entitled to an injunction (without posting a bond) restraining such person from any such actual or threatened

# EMPLOYMENT AGREEMENT
## Ardex of South Florida



breach.   The Employee agrees that in the event of the actual or threatened breach of this Agreement, the Company's harm will be irreparable and that the Company has no adequate remedy at law to prevent such harm.

**17.**   **Attorney's Fees.**   The Employee agrees to pay the Company all costs incurred including, without limitation, legal fees and expenses, if this Agreement is enforced against the Employee.

**18.**   **Amendment.**   No amendment to this Agreement shall be binding on either party unless reduced to writing and signed by all parties.

**19.**   **Governing Law.**   This Agreement has been negotiated in the State of Florida and the law of that state shall govern its construction and validity.

**20.**   **Binding Effect.**   This Agreement shall inure to and shall be binding upon the parties hereto and the successors and assigns of the Company.   The Employee's rights and obligations under this Agreement are personal and not assignable or delegable in any manner or to any extent.   The Employee agrees that the Company may sell or assign this Agreement.

**21.**   **Supremacy.**   This Agreement shall supercede any and all other employment contracts between the parties dated prior to the date of this Agreement.

**22.**   **Waiver.**   The waiver of either party of any breach or violation of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or violation hereof.

ALBERT M. HERNANDEZ, EMPLOYEE- DATE

ARDEX OF SOUTH FLORIDA  LLC.

By: _____